FREDERICK L. E. AMELUNG AND OTHERS *vs.* ALBERT
SEEKAMP.—*June,* 1838.

The principles and powers of the court of chancery in England at the time
of the revolution, not altered by our legislation, nor inapplicable to our
political institutions, are the same by which the court of chancery of
Maryland is governed.

An injunction will not be granted in England to restrain the commission of a
mere trespass; nor will an injunction for that purpose be granted in Mary-
land, pending proceedings at law to try the right, except in cases of irre-
parable mischief, or to prevent a multiplicity of suits, or where peculiar
circumstances imperatively demand such a conservative remedy.

The mere allegation of a complainant, that irremediable damage or irreparable
mischief will ensue, is not sufficient; but to entitle the party to an injunc-
tion, the facts must be stated, to shew that the apprehension of injury is
well founded.

THIS was an appeal from the equity side of *Baltimore*
county court, from an order granting an injunction, and an
order continuing the same on the motion to dissolve.

On the 4th December, 1837, *Albert Seekamp* exhibited his
bill, alleging that he was seized in fee of several parcels of
land situate in *Baltimore* county, together with all and every
the rights, privileges and advantages to the same belonging;
that the said parcels of land are improved with valuable grist
and saw mills; that at the time his title accrued, to wit: in
1828, and for more than twenty years, and immemorially
theretofore and since, the owners and occupiers thereof were
used, and accustomed to have and enjoy, and did have and
enjoy, a certain ancient private road or way therefrom to the
*old Liberty road.* in the county aforesaid, through and over the
tracts or parcels of tracts of land, situate between said *old
Liberty road,* and the pieces or parcels of ground aforesaid;
that within the present year a certain *F. L. E. Amelung,
Joseph Jamison,* and *James L. Ridgely,* being jointly or seve-
rally in possession of the tracts or parcels of land over and
upon which lieth the said ancient road or way, have hindered
and obstructed him in his use of the same, to the said *old
Liberty road,* from his property aforesaid; so that he, the
complainant, hath been obliged to institute his action of tres-

pass on the case against them to recover damages for said obstruction and hindrances; that notwithstanding complainant's action at law, and his ancient right, the said appellants do still hinder and obstruct, and threaten wholly to hinder and obstruct his said exercise of the right of passage over and upon said way, from, &c. as aforesaid, whereby great and irremediable damage will accrue to him, his mills aforesaid being thus wholly cut off from their ancient and accustomed outlet, and forasmuch as complainant is remediless at law. Prayer for injunction and subpœna, &c.

This bill was accompanied with a certified copy of the docket entries in the action at law, and thereupon the court (*Magruder, A. J.*) ordered, that upon the filing of a bond with security, to be approved by this court, or a judge thereof, in the penalty of $1,000, with the usual condition to prosecute with effect, and with the further condition to pay all damage which may arise or happen from the issuing the injunction now about to be ordered—that an injunction issue as prayed, with the usual liberty for the defendants, or any of them, to move at any time, upon one day's notice, either for a new and additional bond, with a larger penalty, or for additional security, or both, and that the defendants be served with a copy of this order with the writ of injunction.

The complainant filed his bond, and a writ of injunction issued, prohibiting the defendants from obstructing the said road.

The defendants answered this bill, after which testimony was taken; but the view finally taken of the nature of the writ of injunction by this court, renders, in the opinion of the reporters, the insertion of either answer or proof unnecessary.

Upon the motion to dissolve, Baltimore county court (*Magruder, A. J.*) passed the following order:

The only doubt which I have entertained in this case, has been, whether the complainant ought not, in conformity to the established principles of law in *England*, to settle his right at law, where his title is controverted by the defendants' answer. There it is necessary that the individual complain-

ing of the injury, such as is alleged by the complainant in this cause, should have had his rights first established at law, but here in *Maryland,* where an action or proper proceeding has been instituted in analogous cases, to try the right, an injunction is always granted, and according to the decisions of the court of chancery for a long time passed, ought to be continued until the right has been determined at law, or in some other regular mode, as by an issue directed out of chancery. In *Maryland* it seems to be settled by the decisions of three successive chancellors in cases analogous in my judgment, to the case now under consideration, that contrary to the usual rule in all other cases of injunction, it is no sufficient answer for the defendant to deny positively, the validity of the complainant's title. The injunction will be continued, notwithstanding such denial. It is sufficient that the complainant claims under colour of title—the injunction will be continued in such case pending the proceedings at law to try the right.

I cannot perceive the distinction attempted to be drawn by the arguments of counsel between the cases of ejectment, (where injunction to stay waste pending the suit at law instituted to try title and location was granted,) and that now under consideration. The complainant sets up an uninterrupted adversary user of an ancient private way across the lands of defendants, for a length of time, which (if the fact be so) gives him as complete a title to the road as if he had obtained a deed therefor, and as an easement of that description is susceptible of, and he sets up possession of that road as far as he can, from the nature of his title, have possession— he alleges that he will, if not relieved by the interposition of a court of equity, be subject to all the mischiefs and injury to which a party claiming land would be, pending an ejectment brought by him to try the title, and asks relief adapted to his case, pending the proceedings at law, which he has instituted to try his right. I think he is entitled to it. The court may in the *interim,* upon a proper foundation being laid, make some provision, the best that can be, for the parties. If fur-

ther indemnity is asked by the defendants, as, for instance, an increase of the penalty of the injunction bond or additional security, it will be considered, on a proper application being made, supported by affidavits. Upon the whole, the complainant's title being positively averred in his bill, although denied by the answers, and he having brought his action at law to have that title authenticated and sustained, must, as I think, under the practice in *Maryland*, have relief from this court as a court of chancery, by the continuance of the injunction issued in this cause, until the right to the road is decided at law, or at least until further order. It is therefore, this tenth day of March, 1838, ordered and adjudged, by Baltimore county court, sitting as a court of equity, that the injunction heretofore issued in this cause, be, and the same hereby is continued until the further order of this court.

The defendants appealed, and the cause was argued before BUCHANAN, Ch. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

MAYER and GLENN, for the appellants, cited:

3 *Bro. Chan. Rep.* 481. 2 *Stor. Com.* 204. 6 *John. C. R.* 19. 9 *Wendell*, 577. 1 *Mad. C. P.* 157. 8 *Con. Eq. Rep.* 336. 3 *Paige Rep.* 213. 1 *Hopk.* 347. 7 *Serg. & Low.* 528. 6 *Serg. & Low.* 524. 3 *Saund. R.* 175. (*d*) 3 *East.* 294. 5 *Taunt.* 125. 4 *Law Lib. Woolrick*, 12, 70. 17 *Mass.* 448. 9 *Serg. & Low.* 324. 5 *Pick.* 421. 8 *Pick.* 504. 2 *Swan.* 338. 1 *Taunt.* 206. 5 *Har. & John.* 478. 2 *Gill & John.* 173. 7 *John. C. R.* 332.

J. MASON CAMPBELL and R. JOHNSON, for the appellee, cited:

1 *Serg. & Low.* 118. *Beam. Plea. Eq.* 217, 218. 18 *Ves. Jr.* 186. 1832, *ch.* 302. 3 *Paige*, 213. 9 *Wend.* 577. 6 *John. C. R.* 439. 8 *Cowen*, 334. 1835, *ch.* 380. 8 *Pick.* 509. *Wright and Freeman, Har. & John.* 3 *Saund.* 175. (*d*) 27 *Serg. & Low.* 192. 5 *Pick.* 421. 8 *Pick.* 504.

Dorsey, Judge, delivered the opinion of the court.

In *Snowden vs. Noah*, 1 *Hopkins' Ch. Rep.* 353, it is stated as a general principle, that the writ of injunction is a most important remedy; but it is only used to protect rights which are clear, or at least free from reasonable doubt. And in 1 *Mad. Ch.* 157, it is asserted, in like manner, that in the case of a private nuisance, it seems necessary that a judgment at law, ascertaining the rights of the parties, should be obtained previous to an injunction. And the same principle is recognized in 8 *Con. Eq. Rep.* 336, except in cases where the injury is irreparable. But it is insisted that an injunction is always granted and continued in *Maryland*, to stay trespass, pending litigation at law to try the title to land; and that the same remedy should be applied for the protection of the right now in controversy.

Before we admit the truth of this conclusion, let us inquire whether the premises upon which it is founded be true. The principles and powers of the court of chancery in *England*, at the time of the revolution, not altered by our legislation, nor inapplicable to our political institutions, are the same by which the court of chancery of *Maryland* is governed. Is such a preventive power exercised by the English court of chancery is then the first question to be examined?

For the exercise of such an abstract power, not an *English* authority can be produced; whilst the authorities there, are uniform and numerous, that no injunction will lie to restrain the commission of a mere trespass. That a simple trespass by a stranger or person claiming title, unless productive of irreparable mischief or ruin, or to prevent a multiplicity of suits, or required by some peculiar circumstances, is no ground for the issuing of an injunction; see the cases collected in the note to 2 *Desaus. Eq.* 437, and also the case of *Jerome vs. Ross*, 7 *John. C. R.* 315.

The next inquiry is, is it the established chancery doctrine in *Maryland* to restrain the repetition of a mere trespass, pending proceedings at law to try the right? For such a departure from a well settled principle of equity, as much a

part of the chancery jurisprudence of *Maryland* as of *England*, no satisfactory reason can be assigned. The early cases decided in the chancery court of *Maryland*, which have been regarded as warranting an injunction in all cases of trespass, pending litigation at law, do not establish the doctrine attempted to be deduced from them. They are either cases where *fraud* in regard to title is the ground of controversy in the chancery court; and where, in the language of the chancellor of *New York*, in *Apthorpe vs. Comstock*, 1 *Hopkins*, 148, the court in which equitable relief is sought, and which alone can give that relief, takes the whole controversy under its own control, and prevents any litigation, excepting that which itself directs, as conducive to its own decision : or they are cases in which the complainant's title being purely equitable, he could maintain no action at law, and was remediless, but for the interposition of a court of equity. Such are the cases of the *Attorney-General vs. Norwood*, and *Cole vs. Garretson*, cited in 1 *Bland's Chan.* 581, or they are cases, in which it may be supposed, consistently with the facts stated, that the chancellor regarded the mischiefs resulting from the trespasses threatened, as irreparable. If then acting under a misconception of the early cases referred to, the modern doctrine contended for has been, as is asserted, introduced into the chancery court of Maryland, it has never received the sanction of the appellate tribunals of the state, and will not be sustained by this court. The powers of the court of chancery are sufficiently comprehensive and extended, when in cases of mere trespass, their preventive interference, by injunction, is restricted to cases of irreparable mischief; to the prevention of a multiplicity of suits ; or to cases where peculiar circumstances imperatively demand the interposition of such a conservative remedy.

We fully concur in the views expressed by *Chancellor Kent*, upon this subject, in *Jerome and others vs. Ross*, 7 *John. C. R.* 315, "that an injunction is not granted to restrain a mere trespass, where the injury is not irreparable and destructive to the plaintiff's estate, but is susceptible of per-

fect pecuniary compensation, and for which the party may obtain adequate satisfaction in the ordinary course of law. It must be a strong case of trespass, going to the destruction of the inheritance, or the mischief is remediless to entitle the party to the interference by injunction;" and of *Judge Story*, who, in his commentaries on equity jurisprudence, 2 *vol.* 207, states, " that courts of equity interfere in cases of trespass, that is to say, to prevent irreparable mischiefs, or to suppress multiplicity of suits, and oppressive litigation."

Assuming then the existence of that analogy, (as respects the issuing of injunctions) between obstructions to rights of way, and trespasses, no benefit will result to appellee before this court in attempting to invoke to his aid this modern doctrine of the chancery court of *Maryland*, ought the injunction to have issued or been continued on the ground of irreparable mischief, is the next inquiry ? It is true the appellee in his bill alleges, that by the obstruction complained of, " great and irremediable damage will accrue to him, his mills aforesaid being thus wholly cut off from their ancient and accustomed outlet:" but the reasons are not given, the facts not stated, which shew to the court that this great and irremediable damage would result by the continuance of the obstruction, until the right of the appellee should be established at law. It is not charged that he has no other reasonably convenient outlet from his mills, that by this obstruction a valuable portion of the customers of his mills will be driven from them. [ The mere allegation of a complainant, that irremediable damage or irreparable mischief will ensue, is not sufficient. To satisfy the conscience of the court, the facts must be stated, to shew that the apprehension of injury is well founded. ] Without such a statement of facts, no injunction should have issued. And the defect in the bill, if such a remedy were applicable to such a case, is not cured by the testimony taken in the cause. So far from its exhibiting a case where the continuance of the outrage complained of would work great and irremediable damage, it shews one which warrants the inference, that the loss or injury

resulting would be trivial, and susceptible of adequate compensation in damages at law. But if it were otherwise, the default of the appellee in standing by and permitting the appellant, *Amelung*, to enclose the land affected by the way in question, and to cultivate and improve the same for four years, would interpose a strong, if not an insuperable barrier to any interference in his behalf by way of preliminary injunction.

Believing that county court erred, both in the order granting, and in the order refusing to dissolve the injunction, this court will sign a decree reversing both those orders with costs in this court.

ORDER REVERSED WITH COSTS.