DAVID CARLISLE
vs.                    } DECEMBER TERM, 1850.
HENRY STEVENSON.

[INJUNCTION TO PREVENT TRESPASS OR NUISANCE—JURISDICTION.]

THIS Court has jurisdiction to compel a defendant, by means of an injunction specially worded, to do a substantive act, whether such injunction be merely ancillary to the relief prayed by the bill or the ultimate object of the suit.

Unless the trespass goes to the destruction of the inheritance, or the mischief is irreparable, or an injunction is necessary to suppress multiplicity of suits and oppressive litigation, equity has no authority to interfere by injunction.

The mere allegation that irremediable injury will result to the complainant, unless protection is extended to him, is not sufficient; the facts must be

stated, that the Court may see that the apprehensions of irreparable mischief are well founded.

The fact that the injury complained of is one that may be continued, does not prove that it is not susceptible of adequate compensation in damages by an action at law.

The permitting a race or ditch for conducting water to remain out of repair, so that the water filtrates through the bank, thereby flooding and injuring the meadow of the complainant, is not such an injury as will authorize the interference of equity by way of injunction.

If actions had been brought at law and damages recovered, and defendant still persisted in permitting the ditch to remain in a defective condition, equity would then interfere by injunction, because it would be shown that the Courts of Law were inadequate to afford relief.

If the race was in as good condition as it was during the life of the person under whom both parties claim, or if the injury complained of was caused by the act of complainant himself, he could not have redress in any Court upon any principle.

——

[The bill in this case was filed upon the equity side of Baltimore County Court, and alleges that Samuel Owings, by his will, devised his dwelling and plantation, lying across Owings's Valley, in Baltimore County, in equal portions to his daughters, Deborah, Hannah, and Urath, giving the lower or eastern portion, on which was his house, barn, saw-mill, and other improvements, to Deborah. That these daughters, and the other heirs-at-law of the said Samuel, united in an amicable partition of his estate, and conveyed to each other their respective portions of it. That by this partition Deborah received the farm lying east, embracing the dwelling, mill, and barn, as the testator desired. Hannah, then a widow, named Hannah Ballard, received the farm lying west and westwardly, and Urath the farm lying highest up the Valley, and farthest west. That Deborah married the defendant, Henry Stevenson, with whom she now lives on her said farm. That Urath intermarried with complainant, who, in virtue thereof, became possessed of her said farm, and in 1840 he purchased the intervening farm of Hannah. That these three farms, extending across Owings's Valley, each contain many acres of valuable meadow land, and are all intersected by the stream of "Jones's Falls." That about twenty years before his death, said Samuel Owings having

erected a saw-mill on his lower place far to the west of said stream, and his dwelling and barn-yard also being situated to the north, and aloof from said stream, and several of his lower meadows and fields being thus located, and requiring occasional watering by artificial means, he stopped the said stream at the western verge of what is now complainant's upper farm, and, by a race or ditch of proper depth, led off the water with the aid of a partial dam across the stream, to the north end, by a very tortuous track, at varying distances from the bed of the stream, and conducted it through complainant's two farms, with a destination to the mill and dry fields, and dwelling and barn-yard aforesaid. That said Samuel, in his lifetime, operated said mill, and irrigated his lower fields, as occasion required, with the waters through this race. That complainant possesses twenty or thirty acres of valuable meadow land below and south of this race, and between its track and the bed of said stream, which, from its descending and depressed condition, is liable to be overflowed, and its crop drowned by the waters escaping and making therefrom, unless its lower or southern embankments are kept in repair, its bed cleared out, and its current kept up. That two suits at law were instituted in Baltimore County Court, in which complainant and said Stevenson were alternately plaintiff and defendant, the object of both of which was to ascertain and settle the respective rights and privileges of himself and defendant in relation to said race and its waters, and the mode of conducting them through their meadows, and it was adjudged, after much investigation and argument, that by the true construction of the will of said Samuel Owings, said Stevenson had a right to the use of the water conveyed in the race, for the purposes for which the testator had used it, and was bound so to conduct it through complainant's lands in the channel of said race, and with such careful preservation of the grade and proper bed and embankments thereof, as that complainant should in no way be injured by leaks or floodings therefrom, and that it was his right and duty to enter upon complainant's lands with his servants and teams and carts, for the purpose of clearing

out the bed, and preserving the grade and current, and repairing the defects in the embankments of said race, so that complainant's crops might and should be preserved and protected from any manner of injury, in consequence of the waters becoming stagnant in or escaping from the banks thereof.

The bill then charges that said Stevenson, while he exercises his right of entering on complainant's lands in a capricious and wanton manner, and doing from time to time imperfect repairs, has allowed the bed of said race, in its lower sections on complainant's land, to be filled up, its lower embankments to fall into decay, the current of the stream to be thereby checked, and its waters to be backed and forced out at various places on complainant's meadows, ruining them and drowning his crops, to his incalculable injury and detriment. That he has been almost constantly suffering for several years past, and is now suffering in his property from the injuries and aggressions aforesaid, notwithstanding the said repeated suits at law, and the judgments therein; that in the course of the last summer he has particularly suffered from the flooding and drowning of his crops and lands, and is yet thus suffering in consequence of the perforations and decay of the embankments of said race, and the filling and choking up of its bed, and the total omission, neglect, and refusal of said Stevenson to repair and correct the same. That unless he procures the interposition of this Court, he must be driven to multiplied and endless, and perhaps fruitless, suits at law, and that he certainly is and must be deprived of the proper and useful enjoyment of his freehold, and subjected to great and permanent injury in his property by the said omissions of duty and aggressions of said Stevenson. He therefore prays for a writ of injunction directed to said Stevenson, commanding him "no longer to permit to be and remain out of repair, the banks of the race or ditch conducting the water of 'Jones's Falls' through the farms of your orator in Baltimore County aforesaid, to the mill and dwelling-house of the said Stevenson, so as by remaining ungraded and cleared out, to permit the waters of said race or ditch to flood or weep upon the said meadow lands of your

orator, or to stagnate in said race or ditch, or in any other way drown or injure the meadows of your orator."

The injunction was granted as prayed in the words above quoted from the bill. The answer objects—1st, to the jurisdiction of the Court to grant the relief prayed upon the case made by the bill; 2d, that the bill does not present a case for an injunction, either as a final or interlocutory remedy; and 3d, that the wives of the complainant and defendant should have been made parties to the suit. It then avers that he has kept the race clean and the banks in repair, and that the filling up which takes place in the bed of it, except so far as freshets may occasion it, is to be ascribed to the manner in which it is used by the complainant himself, who has made pens for his cattle in the bed of it, and by other means caused the channel to be choked up. And that the race and its banks are in as good or better order than they were during the lifetime of the said Samuel Owings, and he denies that any losses have been sustained by the complainant, through any negligence or omission of duty on his part in regard to the bed and banks of said race.

The nature of the proof taken in the cause sufficiently appears from the opinion of the Chancellor.]

THE CHANCELLOR:

It cannot be denied, I think, that the injunction which issued upon the bill in this case, was framed upon the principle of *Lane* vs. *Newdigate*, 10 *Ves.*, 193; and however attenuated may be the distinction between the rule then, if not before established, and the former doctrine of the Court with regard to the appropriate office of an injunction when not issued as a judicial writ to enforce a decree, the principle of that case seems never to have been repudiated. It may, therefore, in my opinion, be assumed that this Court has jurisdiction to compel a defendant, by means of an injunction specially worded, to do a substantive act; and I am not able to see why if this may be done in the first instance, and upon an *ex parte* application, it may not also be done in a proper case by the final

decree.   The difficulties suggested by the defendant's counsel
with regard to enforcing the final decree, equally apply to an
injunction issued at an earlier stage of the cause.   In every
case, if an attachment be applied for and issued for a violation
of an injunction, the inquiry is, has the defendant disobeyed
the order of the Court ?  and I cannot perceive why there will
not be as much embarrassment in determining this question if
the injunction be issued in the commencement as at the conclu-
sion of the cause.   The argument is, that the defendant ought
to be informed by the decree of the Court what he is to do or
to leave undone, and that unless he is so informed upon the
return of the attachment, the question will be presented
whether he has done that which was necessary to be done to
prevent the results against which the complainant asks the aid
of the Court.   But will not this precise question come up in
the case of an injunction issued at an earlier stage of the cause ?
and if so, and it be conceded or shown that an injunction like
the present may issue at such earlier stage, there would seem
to be no reason why it should not issue at its conclusion.   I
therefore think, whether the injunction be merely auxiliary to
the relief prayed by the bill, or be, as it is in this case, the ulti-
mate object of the suit, the form in which it was asked in this
case is no valid objection to it.

But though I think there is no valid objection to the form
in which the aid of the Court is invoked, I entertain strong
doubts upon the question of jurisdiction.   The case appears to
me in its essential features not distinguishable from that of
*Amelung* vs. *Seekamp*, 9 *G. & J.*, 468, and I have not been
able to discover how it can be brought within any of the ex-
ceptions to the general rule then announced by the Court of
Appeals.   It is not, I think, shown here that the complainant
may not " obtain perfect pecuniary compensation in the ordi-
nary course of law ;"   " that it is a case of trespass going to the
destruction of the inheritance, or that the mischief is remedi-
less."   I am not satisfied that the mischief complained of " is
irreparable," or that the interference of the Court, by way of
injunction, is necessary " to suppress a multiplicity of suits and

oppressive litigation." And unless this appears, there is no authority in this Court to grant an injunction.

The mere allegation that irreparable injury will result to the complainant unless protection is extended to him, is not sufficient; the facts must be stated, that the Court may see that the apprehensions of irreparable mischief are well founded. It is true that the mischief complained of here is one that may be continued, but that was likewise the character of the act in *Amelung* vs. *Seekamp*, which was for obstructing the complainant in the enjoyment of a private right of way over the lands of the defendant to the public road, but that, say the Court of Appeals, by no means proves that the injury was not susceptible of adequate compensation in damages, by an action at law.

In the case of *Lucas* vs. *McBlair*, 12 *G. & J.*, 1, relied upon by complainant's solicitor, it was manifest that infinite difficulty existed in obtaining adequate redress at law, and that without the interposition of Chancery an endless series of actions would have been necessary. The object of the bill in that case was to prevent the Commissioners of Lotteries from licensing, and the persons licensed by them, from selling lottery tickets, in opposition to what was adjudged to be an exclusive right in the complainants; and it was therefore clear, that unless the thing was forbidden, litigation interminable, oppressive, and unsatisfactory, would be the result. And the Court of Appeals expressly put their decision upon that ground.

But in this case, the act complained of is permitting a race, or ditch for conducting water, to remain out of repair, by which, it is charged, that the water filtrates through the bank, thereby flooding and injuring the meadow of the complainant. Now assuming that it is the duty of the defendant to keep the race in repair (and this is not controverted), why cannot adequate redress be had in an action at law? Because, it is said, every day the race continues out of repair a fresh injury is done, and a new right of action accrues. But was not this also the case in *Amelung* vs. *Seekamp*? Every day the ob-

struction remained in the road was a fresh injury, and justified a new action, and yet the Court in that case refused the injunction, upon the ground that adequate redress for the injury might be had at law.

If, to be sure, actions had been brought at law by this complainant, and damages recovered, and the defendant still persisted in permitting the race to remain in a defective condition, the Court would then be authorized to interfere by injunction, because it would then be shown (the right of the plaintiff being established), that the Court of Law was inadequate to afford him relief. No such case is, however, exhibited by the bill. It does, to be sure, allege that suits at law had been instituted, but it also appears that in these suits the parties were reciprocally plaintiff and defendant; and without being informed of the nature and object of these suits, or the result of them, we are merely told what was the construction put by the Court upon the will of the late Samuel Owings, respecting the rights and privileges of the parties, founded upon the will. It is certainly not stated or shown anywhere in these proceedings that the present complainant had repeatedly appealed to the legal tribunals for redress, and that although his right thereto was established, their power was not sufficient to afford him adequate relief.

But considering this view to be untenable, and assuming that a Court of Equity is competent, and ought to exercise its extraordinary jurisdiction upon the facts charged by this bill, supposing them to be admitted, or established by the evidence, I should yet very much question the propriety of doing so in the present case, and this upon two grounds.

*First*, because I am far from being satisfied that the race is not in as good, or better, condition now than it was during the life of Samuel Owings, under whom both parties claim; and *secondly*, because there are certainly plausible reasons disclosed by the evidence for believing that the injury complained of is, to some extent at least, caused by the acts of the complainant himself. And if either ground can be maintained upon the proof, there would seem to be no injury for which repara-

tion can be had in any Court, or upon any principle; for it cannot be asserted that the complainant is entitled to be in a better condition than him under whom he claims, or that he has a right to ask redress for a self-inflicted injury.

I do not deem it necessary to refer in detail to the evidence upon which my impressions upon these questions is founded, and will merely say that the conclusion to which I am strongly inclined to come, cannot well be avoided upon an examination of the testimony of William L. Owings, who, from his relation to the parties and peculiar opportunities of observation, is particularly qualified to speak upon the subject. At all events, it appears to me, looking to the whole of the evidence, that it would be a stretch of authority in this Court to undertake to decide these questions of fact, eminently proper to be passed upon by a jury. It surely would be better, before this Court exerts its power in this form, holding out what has been termed the menacing process of an injunction, to have these controverted questions settled at law, for unless this is done, the parties cannot have the benefit of that more satisfactory examination of facts which the intervention of the jury in such cases seldom fails to afford.

I am, therefore, of opinion, that the plaintiff has not shown himself entitled to the relief he seeks, and his bill must consequently be dismissed.

J. J. SPEED and JOHN NELSON, for Complainant.
J. M. CAMPBELL, for Defendant.