## GROVE SHIPLEY *vs.* JACOB RITTER and others.

It is the settled law of this State, that though an injunction will not lie to restrain a trespasser merely because he is a trespasser, yet equity will interfere where the injury is irreparable, or where full and adequate relief cannot be granted at law, or where the trespass goes to the destruction of the property as it had been held and enjoyed, or to prevent multiplicity of suits.

The destruction of timber, ornamental and fruit trees, will be prevented by injunction, upon the ground that these are cases of great and irremediable mischief, going to the destruction of the estate in the character in which it is enjoyed.

Where there is no dispute as to the title and the land is the complainant's dwelling plantation, and a portion of it is in timber, particularly valuable as such as well as for the protection of his dwelling, besides being ornamental, and defendants, without authority, have *cleared up* part of this timber land and converted *it into* waste and pasture land, and are *continuing* so to clear up the rest, it is a case of irreparable mischief, which equity will restrain by injunction.

There is no difference in principle between protecting trees *planted* for shade and ornament, and those growing *naturally*, but so situated as to afford the same convenience and enjoyment to the proprietor and his family.

APPEAL from the Equity Side of the Circuit Court for Carroll county.

The bill in this case was filed by the appellant against the appellees, alleging, that complainant is seized in fee-simple of a tract of land and plantation in Carroll county, (the title deeds to which are set out and exhibited with the bill,) consisting of two hundred and forty acres, more or less, and has been in the peaceable possession and occupancy thereof, claiming title thereto, for more than thirty years; that it constitutes and is the residence of complainant and his family;

that a part of it is in timber, consisting of oak, chesnut, hickory, and other growth common to the section of country in which it is situated, and is particularly valuable and desirable to complainant as timber land, so much so that it would be and is attended with irreparable injury for the same to be cut down and destroyed, or converted into pasture or waste land; that a portion of said timber land, and the portion which is in part the subject of the waste and destruction hereinafter complained of, is so situated in reference to complainant's house and out-buildings, that it affords them protection and shelter from the severity of the seasons of summer and winter, besides being ornamental, and that on these accounts also the waste and destruction hereinafter set forth and complained of is attended with and is an irreparable injury to complainant.

The bill then charges, that the defendants, upon sundry frivolous and unfounded pretences, without the consent and against the will of the complainant, on the 22nd of January 1853, and on sundry other days and times between that day and the filing of this bill, did enter upon the said tract of land and wood timber land, and, with axes and other implements, did fell, cut down, clear up, waste and destroy, said timber and said timber land, and did convert said timber so cut to their own use, and did turn said timber land into waste land and pasture land, and are continuing to fell, cut down, clear up, waste and destroy, said timber and said timber land, and to convert the said timber so cut to their own use, and to turn said timber land into pasture land and waste land, to the great and irreparable damage, loss and injury of the complainant; and that he is remediless in the premises at law and without the aid of a court of equity.

The bill then prays for *subpœnas* against the defendants to answer, for an injunction restraining them from committing further waste and depredation on said land, or any part thereof, (which was granted,) for an account for the timber they have destroyed and may destroy, and for general relief. To this bill the defendants filed a demurrer, assigning for cause of demurrer:

1st. That the bill does not state a case entitling the complainant to an injunction or to any relief in equity against them, as to any of the matters contained in the bill.

2nd. That by his own showing the complainant has full and complete remedy at law for the trespass complained of, and is in no way entitled to relief in equity.

3rd. That there is no allegation in the bill that complainant has instituted a suit at law against the defendants to try the right and trespass at law, and that such suit was pending at the time the injunction was asked for and granted.

This demurrer the court, (NELSON, J.,) sustained, and passed an order dissolving the injunction and dismissing the bill, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Oliver Miller* and *James Raymond* for the appellant, argued :

1st. That the demurrer to the bill admitted the title of the complainant to the land, and there was therefore no necessity for instituting a suit at law for the purpose of trying the *right*. "Where the plaintiff's title is *not controverted*, it is considered as established that a court of equity will always interpose to restrain irreparable mischief." *Opinion of Judge Duer*, in *Jerome vs. Ross.* 7 *Johns. Ch. Rep.*, 322. *Eden on Injunction*, 140.

2nd. Though the decisions in this State are clear to the point that an injunction will not lie to restrain a *mere trespass*, they are also clear that it *will lie* where the injury is destructive of the estate, as it has been held and enjoyed, or where full and adequate relief cannot be granted at law, or where the injury is irreparable. 9 *G. & J.*, 468, *Amelung vs. Seekamp.* 4 *Gill*, 34, *Hamilton vs. Ely.* 1 *Md. Rep.*, 525, *White vs. Flannigain.* 3 *Md. Ch. Dec.*, 457, *Herr vs. Bierbower.* *Ibid.*, 499, *Carlisle vs. Stevenson.* 3 *Md. Rep.*, 480, *Ches. & Ohio Canal Co. vs. Young.* 4 *Md. Rep.*, 98, *Green vs. Keen.* See also 7 *Johns. Ch. Rep.*, 315, *Jerome vs. Ross.* 2 *Story's Eq.*, sec. 928, and cases there cited.

Shipley *vs.* Ritter, *et al.*

3rd. The question then is, whether the allegations of the bill make out such a case as will warrant the interference of equity by way of injunction? We submit that it does. It alleges that this tract of land was the home plantation of the complainant; that the timber land on which the injury is committed is *particularly* valuable and desirable to him *as timber land;* that a part of it is so situated as to afford protection and shelter to his house and out-buildings from the severity of the seasons of summer and winter, *besides being ornamental;* that the defendants are proceeding not only to cut down this timber, but to *clear up* the land and *convert* it from timber land to *waste* and *pasture land.* If this be not a destruction of the estate in the manner in which it has been held and enjoyed within the principle of the authorities above cited; if it be not a mischief for which a compensation in damages at law would not be adequate; if it be not an injury which equity will prevent; then there would indeed be, in the language of Judge Story, "a great failure of justice in the country." 2 *Story's Eq.*, secs. 928, 929, and cases there cited. The allegation as to ornamental trees alone is sufficient to warrant the interposition of equity. 17 *Ves.*, 110, *Kinder vs. Jones.*

4th. It is claimed that if the decree be reversed the appellant is entitled to judgment on demurrer, with *five pounds* costs, under the act of 1785, ch. 72, sec. 28.

*William P. Maulsby* and *Joseph M. Palmer* for the appellees, argued the following points:

1st. It is a settled principle in this State, that a court of equity will never interpose by an injunction to prevent a mere trespass, where no suit has been instituted in a court of common law to recover damages for the trespass and to try the right of plaintiff, before injunction granted. It is believed that no reported case can be found where a court of equity has interposed by injunction in this State for a mere trespass, where the bill does not allege the institution of an action at law.

2nd. The injury complained of, as alleged by complainant in his bill, is a mere and ordinary trespass for cutting common timber trees, for which, if true, the complainant had a complete and adequate remedy in a court of common law, and that there is no allegation in said bill of complaint to entitle said complainant to the interposition of a court of equity by injunction. The allegations in the bill did not warrant the injunction.

3rd. A court of equity will not in every case restrain a mere trespass; it is only when irremediable damages will result to the estate, and the facts which constitute this "damage must be stated in the bill clearly and distinctly; and the damages complained of must be *intolerable* and the *mischief irreparable*," or where the trespass goes to the destruction of the thing. These principles are fully sustained by the following authorities: *Ches. & Ohio Canal Co. vs. Young*, 3 *Md. Rep.*, 480. *White vs. Flannigain*, 1 *Md. Rep.*, 525. *Hamilton vs. Ely, et al.*, 4 *Gill*, 34. *Amelung vs. Seekamp*, 9 *G. & J.*, 468. *Jerome, et al., vs. Ross*, 7 *Johns. Ch. Rep.*, 315. The chancellor, in the case of *Herr vs. Bierbower*, 3 *Md. Ch. Dec.*, 457, lays down the true rule upon this subject. In that case the trespass complained of was an utter destruction of complainant's *estate*. So also are the views of the Court of Appeals, in the case of *Ches. & Ohio Canal Co. vs. Young*, in strict accordance with all the modern decisions upon this subject, both in England and this country. The bill should have stated that an action at law was pending, or that complainant intended to institute one to try the right. 1 *Bland*, 578, 587, *Duvall vs. Waters*. 3 *Bland*, 441, *Stewart vs. Chew*. 9 *Howard*, 28, 29, *Irwin vs. Dixion*, and cases referred to. 9 *G. & J.*, 468. 4 *Gill*, 34.

4th. The complainant has a complete and adequate remedy in a court of common law to recover damages for the supposed trespass, hence the circuit court, as a court of equity, ought not to have interposed by injunction. A court of equity cannot assess damages for a mere trespass. 7 *Johns. Ch. Rep.*, 315. *Kerlin vs. West*, 3 *Green Ch. Rep.*, 449. 9 *G.*,

& *J.*, 468. 6 *Johns. Ch. Rep.*, 500, *Livingston vs. Livingston.* In this case, from complainant's own showing, complete damages may be obtained at law.

Tuck, J., delivered the opinion of this court.

The doctrines of equity, applicable to cases like the one now before us, are so fully considered in the reported decisions of this court, and the authorities there referred to, that we deem a review of them altogether unnecessary. We consider it the settled law of this State, that although an injunction will not be granted to restrain a trespasser merely because he is a trespasser, yet equity will interfere where the injury is irreparable, or where full and adequate relief cannot be granted at law, or where the trespass goes to the destruction of the property as it had been held and enjoyed, or where it is necessary to prevent multiplicity of suits.

This power has been exerted to restrain the destruction of timber, ornamental and fruit trees, on the ground that these are cases of great and irremediable mischief, which damages could not compensate, because it reaches to the very substance and value of the estate, and goes to the destruction of it in the character in which it is enjoyed. *White vs. Flanigain*, 1 *Md. Rep.*, 544. *Jerome vs. Ross*, 7 *Johns. Ch. Rep.*, 315. According to *Mr. Justice Story*, (*Vol.* 2, *sec.* 928,) "If the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of courts of equity. Formerly, indeed, they were extremely reluctant to interfere at all, even in regard to repeated trespasses. But now there is not the slightest hesitation, if the acts done, or threatened to be done to the property, would be ruinous or irreparable, or would impair the just enjoyment of the property in future. If, indeed, courts of equity did not interfere in cases of this sort, there would be a great failure of justice in the country." See, also, *Amelung vs. Seekamp*, 9 *G. & J.*, 468. *Hamilton vs. Ely*, 4 *Gill*, 34. *Canal Co. vs. Young*, 3 *Md. Rep.*, 480. *Green vs. Keen*, 4 *Md. Rep.*, 98.

We do not understand the counsel to differ as to the principles governing cases of this description. The point of contest is, whether the present bill of complaint shows a state of facts entitling the appellant, who was the complainant below, to the relief he seeks? In deciding this part of the controversy, little aid can be drawn from adjudged cases, as they rarely, if ever, present the same state of facts, and each must be considered with reference to the nature, character and condition of the property to be protected. 1 *Md. Rep.*, 546.

Unlike most of the cases referred to, there is no dispute here as to the facts on which the alleged equity rests. But the argument, on the part of the appellee, is, that the bill does not state a case to satisfy the conscience of the court that the charge and apprehension of irremediable injury is well founded, according to the cases of *Amelung vs. Seekamp*, 9 *G. & J.*, 468. *Hamilton vs. Ely*, 4 *Gill*, 34. Upon this point, however, we think there is no reasonable ground for doubt. The averments admitted by the demurrer show, substantially, that the land belongs to the complainant, and is occupied by him as his dwelling plantation; that a portion of the estate was in timber, particularly valuable as such, as well as for the protection of the dwelling, besides being ornamental; that the defendants, without authority, have cleared part of that timber land, and converted it into waste and pasture land, and that they are continuing to cut down the timber, and to convert the rest of the timber land into waste and pasture land, destroying the forest trees that served to shelter his dwelling from the inclemency of the winter season, and to afford shade to his family in summer, depriving the owner of the use of all the timber on the farm by its utter destruction, to his great and irreparable damage, loss and injury. We see, by the bill, that the timber is of descriptions, though common to that section, particularly valuable and indispensable to farms in every part of the State; without which they cannot be worked, except at great and constantly recurring inconvenience and expense to the proprietors; and the whole of the timber land on this plantation is the subject of these continued acts. If

such grievances do not furnish a strong case of trespass, going to the destruction of the inheritance, where the mischief is remediless, 9 *G. & J.*, 474 ; if they do not necessarily reach the very substance and value of the estate, and go to the destruction of it in the character in which it is enjoyed, 7 *Johns. Ch. Rep.*, 315 ; if they do not impair the just enjoyment of the property, in future, as a dwelling plantation, 2 *Story*, 938 ; it is difficult to imagine a case of trespass in which equity should interfere. To deny relief under such circumstances, would be to declare that the destruction of all the timber on a farm, and the conversion of the land into waste and pasture land, thereby permanently injuring its value as a farm, and impairing the comfortable occupancy of the dwelling and out-houses, by removing shade and ornamental trees, is an ordinary trespass to be compensated in damages at law, a position which we think cannot be maintained.

If the trees had been planted for shade or ornament, we suppose that, according to adjudged cases, the question would be too clear for argument. What difference, in principle, can there be between such trees and others so situated in reference to the dwelling as to afford the same convenience and enjoyment to the proprietor and his family? A man has a right to select his building site near to or in the midst of a wood, for the benefit of the protection afforded by the trees, with as just a claim, in equity, to have them preserved, as if they were costly exotics transplanted for shade or ornament only. The grievance is more to be complained of where the land is peculiarly valuable by reason of its standing timber, as essential to its profitable enjoyment.

The jurisdiction of equity does not depend on the worth of the trees, merely as wood or timber, but on their location as part of an estate, rendering it more valuable by reason of the uses to which they are or may be devoted, the destruction of which would materially impair the enjoyment of the property as held and occupied at the time of the trespass. It is true, that actions at law might be maintained, and exemplary damages, perhaps, would be awarded, but we hold, that in such

cases there is something to be regarded beyond the mere pe-
cuniary value of the trees, and the punishment of the tres-
passer by the verdict of a jury. The owner of property is
entitled to be protected in its just and reasonable enjoyment,
or to have full and complete remuneration for being disturbed
therein ; and whenever the court can see that the acts com-
plained of are of a character necessarily to affect, permanent-
ly, such use, and do not admit of perfect pecuniary compen-
sation ; that "the enjoyment of the estate will be so affected
by the destruction of the trees, as to make the alleged damage
irreparable," 4 *Md. Rep.*, 196, it would be a denial of justice
not to stay the hand of a destroyer, who, in pleading, admits
himself to be a wrong-doer, invading the possessions of
another, and perpetrating acts of intolerable outrage on pro-
perty to which he sets up no right, and has no pretence of
title.

For these reasons we think that the decree of the court be-
low, dismissing the bill, should be reversed, and the cause
remanded, with liberty to the appellees to answer and have
the case presented on its merits. *Tolson vs. Tolson,* 8 *Gill,*
376. Whether the complainant will be entitled to the five
pounds fine, under the act of 1785, ch. 72, sec. 28, will de-
pend on subsequent proceedings in the court below.

*Decree reversed and cause remanded,*
*with costs of the appeal.*

ECCLESTON, J., dissented.