# J. DIXON ROMAN, and others, *vs.* HENRY STRAUSS, and others.

Upon an appeal from an order granting an injunction, the propriety of the order is to be determined by the bill alone, without looking to the answer subsequently filed.

A party entitled to a right of way over a street or a road, may be protected in the enjoyment thereof by an injunction restraining the erection of obstructions thereon.

But in a bill for such an injunction, the mere allegation of irreparable mischief from the acts complained of, is not sufficient; the *facts* must be stated, to show that the apprehension of injury is well founded.

A bill, alleging that an *alley*, over which the complainants are entitled to a right of way, is the *only reasonably convenient* mode of reaching their property and place of business, the streets binding thereon being already rendered nearly impassable by the rail road tracks laid upon them, and that the defendants are about to obstruct this alley by laying a rail road track across it, by which the complainants will be subjected to daily irremediable damage, is sufficient to warrant the granting of an injunction to prevent such obstruction.

APPEAL from the Circuit Court for Baltimore city.

This was an appeal, taken by the appellants after filing their answers, from an order of the court below, (KREBS, J.,) grant-

ing an injunction upon a bill filed by the appellees, the allegations of which are sufficiently stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Cornelius McLean,* for the appellants:

The bill does not make any case for an injunction.   It does not show any public street or alley.   The only right the complainants have, is, that an alley shall at some time or other be laid out, and the deed to them from the Ellicotts, under whom both parties claim, calling for an alley.   In point of fact none has as yet been laid out, and by an examination of a plat of Baltimore, the court will see, and the contrary is not alleged, in the bill, that there is no public alley in the place designated. The bill alleges that the appellants own the property west of the complainants.   They, therefore, are the sole owners of all the rest of the alley; no person being interested but themselves and the complainants.   They, therefore, have the same right to use the alley that the complainants have.   By reference to the map of the city of Baltimore, and the state of trade at Locust Point, both matters of public notoriety and general concern, which the court will take notice of, it will be found that to the north of the alley claimed are extensive wharves for shipping coal, admitted by the bill to be owned by the appellants.   Can the court see how crossing it by rail road cars will interfere with the complainants' use of the alley? for the fee-simple is admitted by the bill to be in the appellants, and, therefore, putting the track across the alley cannot be considered a pragmatic interruption of the complainants' right. They have, therefore, only exercised their right to use the alley, as they have a right to use it in any way they please, provided they do not interfere with the use of it by the complainants.

If the complaint had been that the track was being made along the alley, only fifteen feet wide, there might be a *prima facie* case under the oath of the complainants; but the com-

plaint is, that the rail road only *crosses* an alley in which the appellants have the same right of use which the complainants have, and the fee-simple in addition.   It is not alleged in the bill, and it is not a fact, that the track is or was designed to cross the alley at a different level or grade from the alley itself, so as to cause an embankment or deep cut; or if it was to be raised above or run under the grade of the alley, that it was designed to block up the way, by not allowing a passage under, in the one case, or over the track in the other.   In all these respects the bill is defective in not showing the court the nature of the injury intended to be complained of.   If I grant a right of way through my field, may I not *cross* it?   If I grant the use of an alley to a third party, may I not use it according to the necessities of my adjoining property?   The other party has no right to complain of my use, unless he is *injured by it,* and the *onus* is on him to show not only that he is or will be injured, but *how* he will be injured.   The bill does not allege that locomotives are intended to be used in crossing the alley.   The track is being made by a private individual, a mere switch to connect his property lying on the water with his property lying on the rail road, and how that can be any more injurious than if the crossing were without a rail road, is beyond my imagination to conceive.

But how can it be an *irreparable* injury, as the complainants have sworn?   How can this alley have been the only outlet to their property, as they have sworn?   They say the place is one of great business.   So it is.   How came it a place of great business?   By means of the rail road bringing produce of different kinds to Locust Point.   Property is valuable at Locust Point by reason of its connection with the rail road. But here is an attempt by an injunction and most grave swearing, to stop the appellants from connecting their property on the water with the rail road that gives to all the property at Locust Point its value, by preventing him from making use of his own property; and without an attempt in the bill to show how the injury is to be done at all, especially without showing that it is irremediable.   Rail roads traverse various streets in Baltimore, New York, and other cities.   Have they prevented

access to property on each side, so as to make a rear alley the only access to a lot cornering on two streets. No injunction has ever before been granted in Maryland in such a case, and injunctions have gone further in this State than any where else. The case of *Shipley vs. Ritter*, 7 *Md. Rep.*, 415, has gone the farthest in favor of injunctions; but even there, there was no claim of right, or no admitted right, as there is in this case. There a change was to be produced in the enjoyment of the estate, and it abundantly appeared by the bill that the injury was of a character to change the enjoyment of the property of the owner. In *White vs. Flannigain*, 1 *Md. Rep.*, 545, it is said, that the nature and character of the property must always be looked to, in order to ascertain whether a court of equity would interfere by an injunction or not.

Apply the principles of these cases to this, and we shall find not a shadow of right in the court below to interfere in this case. This is an alley, it is true, but it is not a public street or alley, and the persons complained of have the fee-simple and the joint use, and contemplate crossing from the rail road to the water. By this means important commercial effects can be produced, and their property brought into active employment. The injury to them must, therefore, from the showing of the bill, be great, if they are impeded or arrested by the interference of a court of equity. What can be the injury to the complainants? They swear it will be great, and that it will be irreparable. But the court can see that the crossing will do them no injury. If the appellants had no right whatever to the use of the alley, if they were mere trespassers, the court would assume that some injury would be done. But they have a right. They have all that is not needed for the use, by the complainants, of the alley, and it is, therefore, incumbent on the complainants to show to the court how the crossing will injure the use of the alley, even as a means of approach to their property. They do not, and cannot claim the exclusive use of the alley, nor the fee-simple. It is in a commercial part of the town, where drays and wagons are, and will be used by the owners of the adjoining property, and they might as well ask for an injunction against that use of the alley.

In my opinion, this is a mere attempt to impose upon the court, by making it stretch out its arm to arrest necessary improvements until the complainants can, in their own time and in their own way, force the appellants to buy them out. It is impossible that any reasonable man owning property at Locust Point, whose value must depend on the rail road, can believe that his property will be injured by the crossing of a rear alley in such a way as to get the benefit of the commerce, upon which the value of his and all the adjoining property depends. It is a monstrous infatuation, to say the least of the pretension, to which the court ought not to make itself a party. The bill is very defective in not showing how the road is to be made, unless, which is a fact, it was being made on a proper level, so as to preclude any allegation of the contrary. If any injury ever arises from the cars crossing the alley, it will be by their being left there. This may or will happen from wagons, carts or other vehicles. The remedy is an easy one. It would be a temporary obstruction, for which the appellants would be responsible, not because they were making an improper use of the alley, but because they were negligently using it, and subjected the other party to injury. But this does not necessarily happen. The bill does not allege that such a course will be taken, that negligence will be committed; and an injunction to prevent future negligence would be a novelty. Yet such would be the effect of this injunction. It appears to me, therefore, that the injunction ought to be dissolved, and that an attentive examination of the bill, as to what it contains, and more especially as to what it does not contain, will bring the court to the same conclusion.

*Orville Horwitz* for the appellees:

The only question in this case is, whether the facts alleged *in the bill* are sufficient to entitle the appellees to the remedy by injunction. 6 *Gill,* 101, *Wagner & Marshall vs. Cohen.* 5 *Md. Rep.,* 477, *Alexander vs. Worthington.* It is believed that this case comes, in all respects, within the principles decided in the case of *White vs. Flannigain,* 1 *Md. Rep.,* 539. The appellants seem to think that in order to sustain the bill,

it is necessary to show that the obstruction complained of is to a *public* alley, *already laid out or opened.* The bill shows that the appellees *are using* this alley, and the plat accompanying the same shows that the *alley is laid out and open,* and beyond the bill, according to the decisions above cited, this court cannot look; nor is the allegation in the bill and the plat inconsistent with the fact that this alley does not appear on the map of the city of Baltimore. But *neither* requisite is necessary; for "we hold," say the court in *White vs. Flannigain,* "that where a party sells property lying within the limits of a city, and in the *conveyance* bounds such property by *streets* designated *as such* in the conveyance, &c., such sale *implies,* &c." "When a sale is made in conformity with such plan, the vendor and *all claiming under him,* should be bound by the lines and *designations* by which the property has been sold." And in the next sentence the proposition is approved, that it is immaterial whether the street is opened or not, under the authority of the corporation. In this case it appears that both the appellants and appellees claim title to adjoining property under the same parties, the appellees holding the older title. It is *not* admitted in the bill, as stated in the appellants' argument, that the *property to the north of the alley* belongs to the appellants, but it is alleged that the property to the *west* of the appellees' property belongs to the appellants. Nor can it be seen how it thence follows that the appellants are the *sole* owners of the rest of the alley, or that they own it in fee, as stated in the argument.

It would seem, then, that by the terms of the deed from the Ellicotts, and the authority relied on, there is an implied covenant on the part of the appellants, that the appellees shall have the undisturbed use of an *alley* fifteen feet wide, extending from Towson to Cooksie streets, throughout its entire length, and to the "*full* extent of its dimensions." The allegations of the bill show that the property of the appellees is useful to them for business purposes; that there is no *reasonable* access to it except by the alley named, because of the rail road tracks already laid down, as shown on the plat filed; and that the proposed track will cause irreparable injury, and render their

Roman *vs.* Strauss.

property valueless, for the reasons stated. It is easy to see how the streets binding on the appellees' lot may be so covered by a net work of rail road tracks as to render their property inaccessible over these streets; the bill alleges the fact to be so. This court will not undertake to decide that fact, sworn to, against the appellees in the present state of the case. It is easy to see, moreover, that the condition of the streets binding on the corner lot, may have been the reason why the appellees obtained the covenant for an alley from Towson to Cooksie streets. It is equally easy for the court to see how placing a track across the alley, not only in itself, but by its ordinary and daily use, in interrupting the passage of drays and other vehicles along the alley, may entirely interfere with the enjoyment by the appellees of their easement. Is not this just such a case as would call for the interposition of equity by injunction?

This case seems to warrant an injunction on *all the grounds* approved in *White vs. Flannigain,* and in *Shipley vs. Ritter.* The injury is irreparable; full and adequate relief cannot be granted *at law;* the trespass goes to the destruction of the property as it *has been held and enjoyed;* and it is necessary to prevent multiplicity of suits. In *White vs. Flannigain,* it is said, that if in the case of *Amelung vs. Seekamp,* the complainant "had set out that he had no other *reasonably convenient* outlet, the injunction ought to have issued." This allegation is made in this case, and is shown as a necessary consequence, from the position and condition of the property. In addition, it is alleged that the property of the appellees "*is used for business purposes.*" The court below could not have done otherwise, on the allegations contained in the bill, than grant the injunction, and the appeal ought, therefore, to be dismissed.

There are, in the argument of the appellants, statements of facts not to be found any where in the case. It is unnecessary to comment upon them. The appellants' counsel has seen fit to attribute improper motives to the appellees. There is nothing in the case, as it now presents itself, to justify the harsh language he has used. If this argument had been made

to a jury, it might be my duty to reply to this portion of it, but before *this* tribunal it can only be necessary to meet the *legal* positions he has assumed, and that, it is submitted, has already been done.

TUCK, J., delivered the opinion of this court.

This appeal is taken from an order of Baltimore city circuit court, granting an injunction on the bill of the appellees, and the propriety of that order is to be determined by the bill alone, without reference to the answer of the appellants, subsequently filed.    *Wagner vs. Cohen, 6 Gill, 97.*

The bill alleges that the complainants are the owners of a lot on the north-west corner of Nicholson and Towson streets, Locust Point, in the city of Baltimore, fronting on Nicholson street, and running back for the depth of ninety feet, to an alley fifteen feet wide, from Towson street to Cooksie street; that they are entitled to a right of way over, and to the use of, the alley; that the defendants, now appellants, claim title to the adjoining property on the west, by conveyances from Ellicott, under whom the complainants also claim, which refer to and reserve all the rights of the appellees, by virtue of their deed; that the whole of the property is situated near the water; that Nicholson and Cooksie streets, which bind on the appellees' property, are interlaid with rail road tracks, and rendered almost impassable for drays and waggons, so that the *only* reasonable and convenient access to their property for drays and wagons, is through the said alley by way of Cooksie street; and that the property is used for purposes of business, and as such is of great value to them, provided they are left in the free enjoyment of the easement or alley.    The bill then charges that the defendants, through their agents, in violation of the rights of the complaints, and to their irreparable injury, are causing a rail way or rail road track to be laid directly across the alley, and nearly adjoining the property of the complainants; that thereby they will be prevented from enjoying their easement, and will be subjected to daily irremediable damage; that except through the alley, there is no reasonably convenient access to their property, and that blocking up or impeding the

same, by said track and by the uses thereof, will almost destroy the value of their property; and they pray that these grievances may be prevented by an injunction.

We do not perceive how the court below could have refused the injunction. The case made by the bill is embraced by the principles established in *Amelung vs. Seekamp*, 9 *G. & J.*, 468, and *White vs. Flannigain*, 1 *Md. Rep.*, 525. The latter decided that a party entitled to a right of way over a street, may be protected in the enjoyment thereof by restraining the erection of obstructions thereon; and the former established the same doctrine as to roads. In both cases, however, the mere allegation of irremediable mischief from the acts complained of, is insufficient: "To satisfy the conscience of the court, the facts must be stated, to show that the apprehension of injury is well founded." 9 *G. & J.*, 474. The defect imputed to the bill in that case, was that it was not charged that the complainant had no other reasonably convenient outlet from his mills; that by the obstruction a valuable portion of his customers would be driven from them. We think the facts stated in this bill sufficiently show the character of the obstruction and its consequences. If, as we must assume, the streets binding on this property are already rendered nearly impassable by the rail road tracks laid upon them, leaving the alley as the only reasonably convenient mode of reaching the property and place of business of the complainants, and if, by the rail road track which the appellants are causing to be laid across the alley, and the uses thereof, the complainants will be prevented from enjoying their easement—that is, from using the alley—which they aver to be their only reasonable and convenient outlet, thereby nearly destroying the value of their property, the objection taken to Seekamp's bill cannot be sustained as to that before us.

We cannot notice the improvements and increasing value of the property at Locust Point, by reason of the coal trade, and the necessity for laying these tracks, as urged in the appellants' argument. This may all be so. But we are not aware that such a state of things confers on the owners of property the right to make such roads, to the prejudice of their neighbors.

13     v.10

Courts may be supposed to possess knowledge enough of the uses of a rail road to determine that trains of cars, whether drawn by horses or steam, may have a very injurious effect on the trade and business, and on the value of property, on streets across which they may pass, though they may also be productive of much advantage; and when the irreparable damage is shown, as it is here, relief must be granted in the first instance, leaving the facts of the case to be inquired into afterwards.

The order granting the injunction will be affirmed, and the cause remanded.

*Order affirmed and cause remanded.*