Brinkerhoff, J.
The bill of exceptions taken in this case incorporates within it all the evidence given on the trial; and a motion having been made for a new trial, on the ground, among others, that the verdict was not sustained by sufficient evidence, and that motion having been overruled, and the ruling excepted to, a foundation is laid, under our practice as prescribed by statute, for a review of the finding of the jury on matters of fact. Accordingly we have read and considered the evidence; but as its incorporation in the report of the case would be intolerably tedious, and of no practical value to any one, suffice it to say that if the rulings of the court below on matters of law shall be found to be free from error, we would not, in this case, disturb the verdict of the jury on matters of fact. '
We proceed, then, to the consideration of the matters. of law which the case presents; and to this end we are led, in the first place, to the inquiry: What is the nature of the plaintiff’s ease as made by himself? And on what theory, in respect to it, does he begin and proceed in it ? • It is not an actioxx for the assertion of *119, 120 title to, nor for the recovery of possession of, real estate, nor for the recovery of damages for trespass on real estate; but, both from the allegations of the petition and.from the matters of fact proposed to be offered in evidence to the jury, it is apparent that his action is, and *was intended to be, one for the recovery of [119 compensation on account of the permanent appropriation by the railroad company of his land to its use, and of incidental damages thereby accruing to his other lands for all time to come. Ho questions the right and legal authority of the railroad company to make the appropriation against the canal company, but proceeds upon the assumption that the appropriation has in fact been made; and it is apparent from the record that the case was tried in the court below on this assumption.
It is claimed in argument by the railroad company, that under section 12 of the act of May 1, 1852, “to provide for the creation and regulation of incorporated companies,” etc. (8 Curwen’s Stat. 1880), it had the power, in invitum, as against the canal company, to appropriate the canal for the purposes of its railroad; and if it were necessary in this case to pass upon this question, we should find it to be one not easily resolved in favor of the authority claimed. The power of one corporation, in the exercise of the delegated right of eminent domain, to appropriate, without consent, to its own uses, what constitutes the material body of another corporation, aud which the latter has obtained by the exercise of a like delegated authority, is a power so extraordinary and so susceptible of abuse, that its existence certainly ought not to be inferred from statutory phraseology of doubtful import. But we do not find it necessary in this case to pass upon the question, for it is sufficiently apparent that the proceeding by which the canal was transferred from the canal company to the railroad company, though adversary in form, was in fact an amicable one — a matter of bargain and sale — and the canal company is not here complaining. Its rights are out of the case, except in so far as it may be necessary to consider them incidentally, with a view to the determination of the rights of the plaintiff, Hatch ^ and, as against him, the right of the railroad company to make the appropriation by a proper proceeding is unquestionable.
How, then, stands the case as to him? As before observed, he does not in his action seek to contest the fact of appropriation, nor to undo, it. He does not seek to recover, the land *from, nor [120 *121 to enjoin its use by, the railroad; and, indeed, it is not apparent how he could successfully do either, for, from aught that appears in the caso, there is nothing to show that he did not stand by (with full knowledge of what was being done) and sec the canal filled up and the railroad constructed, under a claim of right to do so, without any attempt on his part to prevent it; and if this were so, he would hardly be permitted to contest the appropriation as an accomplished fact. It is, however, contended in his behalf, that the voluntary giving up of the canal, as a canal, by the canal company, to the railroad company, for the uses and purposes of a railroad, is such a change of the uses and purposes to and for which the original appropriation was made by the canal company, as to constitute an abandonment by the canal company of its easement obtained by the original appropriation, in virtue of which abandonment the land, disincumbered of the easement of the canal company, has reverted to him; and that, therefore, the amount of compensation which he is entitled to exact from the railroad company is to be measured by the value of the land, rather than by an estimate of the additional burdens which the change of uses to which the land has been subjected impose upon him. In this view of the case, however, we are unable to concur.
The right of eminent domain (the right to subject private property to public uses, with the concurrent obligation to make full compensation therefor) is inherent in the state, and when it is lodged to any extent in corporations it is a delegated right, and is limited by the uses for the furtherance of which, on the ground of public policy, it is conferred. The exercise of the right of eminent domain is primarily and mediately the act of the state; and corporations to which it has been delegated and by which it is immediately exercised, are but instrumentalities of the state, although they may have, and generally do have, corporate interests intermingled with and growing out of the exercise of this sovereign prerogative of the state. When the original appropriation of the plaintiff’s lands was made for the purposes of a canal, it was a matter of interest both to the state and to the canal company. The power^to make it was 121] conferred on the canal ^company because it was in furtherance of state policy for the public good; and the power was exercised by the canal company in furtherance of its own supposed corporate interests. These interests of the canal company, and this policy of tho state, might be abandoned; and it is conceded that, if they were *122 abandoned, tbe land, disincumbered of the easement imposed by the act of appropriation, would revert to the holder of the title in fee simple. But the question of abandonment or not, is a question of intention. Junction Railroad Company v. Ruggles, 7 Ohio St. 1. And the intention to abandon may doubtless be inferred from circumstances, where they are strong enough to warrant such inference. But here there are no circumstances indicative of an intention to abandon the easement acquired by the original appropriation, either by the canal company or by the state. The canal company, so far from abandoning it, has sold it, and put the price of it into her treasury; and the state has given no indication of her intention to abandon it. She has not proceeded by information in the nature of quo warranto, or otherwise, to question the franchise of the railroad company to operate its road upon the land formerly used by the canal company; and her policy of permitting railroad companies to condemn lands to their use remains patent on her statute books. The easement in the plaintiff’s land, appropriated by the canal company, was regarded, when taken, as a perpetual easement; it was so looked upon by both parties; courts and juries awarded compensation to the plaintiff on this basis; and he can not now claim, with any semblance of justice, to be paid over again for the same thing. Whether there may or may not be a case of such an utter contrariety in the uses for which a first appropriation was made and those to which the land is afterward sought to be devoted, as necessarily to work an abandonment of the easement, and so a reversion to the owner in fee, we will not assume to say; but such, we think, is not this case. The general purposes to which the easement was and is applied, are the same; to wit, the purposes of a public way, to facilitate the transportation of persons and property. Means and appliances are different, but the objects *are [122 similar; and the legislation of the state has always favored both.
The plaintiff, then, was entitled to compensation from the railroad company for the full value of such land as it may have taken from him not embraced in the appropriation made by the canal company; and for such additional burdens as may have been imposed upon the lands covered by the original appropriation; and for damage dotie or accruing to his adjacent lands, by reason of the additional appropriation, if any, and of the change of structure and of use from those of a canal to those of a railroad, in so far as such damages are peculiar to himself as a proprietor, and not common to the public *123 at large. ..As the owner of land, subject to a perpetual easement, but appropriated and paid- for only for the purposes of a canal, he had rights which the railroad company can not be permitted to ignore; and which, we think, it ought to have instituted proceedings regularly, under the statute, to condemn and pay for, before it ventured to divert the easement to uses so variant from those originally intended. But this not having been done, and the plaintiff having resorted to this action for compensation, the rights of the parties are governed by the same principles which would have been applicable in such a proceeding.
The general principles applicable to the case having thus been disposed of, the particular rulings of the court below alleged for error remain to be considered.
And as to these rulings, we are of opinion:
1. The plaintiff, in his own testimony as a witness, does not claim that any contract ever existed between him and the canal conqmny for a water-power to be furnished by it to him, nor that any such power was ever enjoyed by him. For this, and for other reasons, there was no error in the rulings of.the court below in respect to it.
2. The court below did not err in ruling that the plaintiff had no well-founded claim for damages on account of the loss of the convenience of watering farm stock at the canal, nor for the loss of the convenience of navigating the canal for his own private purposes. The property of the canal company in its canal was absolute; and 128] its right of control over it was ^exclusive; it might have fenced in its canal, and fenced out the plaintiff from any access to its waters, and so have excluded him from either or both of these conveniences, and he would have had no legal ground of complaint. If, during the existence of the canal, he enjoyed either of these conveniences, it was as a matter of sufferance by the canal company, and not as a matter of right against it.
3. The court below held that in so far as the plaintiff’s access between public highways and his adjacent lands were affected to his inconvenience or damage by reason of the change of the uses of the easement from those of a canal to those of a railroad, he was entitled to compensation ; but, if his convenience of access to and from his lands and the highways adjoining them remained the same, the fact that his passage along public highways to and from one portion of his lands and another was by such change made less safe or convenient, he was not on this account entitled to any compensa *124 tion, because it was an inconvenience which he suffered in common with the public at large. In thus holding, we can not but think that it erred. As a matter of fact, is the inconvenience one which the plaintiff suffered in common with the public at large? Let it be remembered that the plaintiff was at first the owner of an entire tract of land; and that this was, first by the canal, and afterward by the railroad, cut asunder. His tract being thus cut into two parts, his means of access from the one to the other were by a turnpike and a county road — the former running through, and the latter along the side of, his original tract; and the fact assumed is, that these means of access from the one part of the tract to- the other were made inconvenient and dangerous by reason of cuts and embankments, one or both, made by the railroad. It seems to us that his case differs from that of a member of the public at large, in this, that the latter is only inconvenienced in a matter of ordinary travel, as in the case of Jackson v. Jackson, 16 Ohio St. 163; while the plaintiff, in addition to this, is subjected to inconvenience- and danger in the ordinary use of his property, which involves the-necessity of constant and necessary passage by him from one part, of it to the other. By the case of Crawford v. Delaware, *7 [124 Ohio St. 459, and many other cases, it has become the settled doctrine in this state, that where the public authorities change the grade of a street in a manner which an owner of land adjacent to-it could not by the exercise of reasonable foresight have anticipated in the making of his improvements, and thereby injuriously affects-his means of access to and from his land and the street, the public becomes liable to him for the damage thus inflicted. And it seems, to us that there is no difference in principle between that case and the one assumed in the question under consideration. In both cases a land-owner is prejudiced in the use and enjoyment of his-private property, and in manner and degree not common to the public at large. This view of the point under consideration is-sustained by the remarks of Chief Justice Shaw, in Proprietors of Locks and Canals v. The Nashua and Lowell R. R., 10 Cush. 385, and by the court in Roman v. Strauss, 10 Md. 89.
4. The questions whether, on the appropriation of land for the purposes of a railroad, inci’eased danger of fire to buildings on adjoining lands of the owner on whom the easement is imposed, is-a proper element in the estimate of damages on -account of such appropriation, and if so, how far, are theoretically and practically *125 of no little difficulty. In this state there has been no authoritative decision of them, and in other states the decisions are conflicting. Somerville and Easton R. R. Co. v. Doughty, 2 Zabriskie, 495; Sunbury and Erie Railroad v. Hummel, 27 Penn. St. 99. Chief Justice Shaw, in 10 Cushing, 385, supra, aiming apparently to split the difference between conflicting claims, expresses .the opinion that .danger from fire may enter into the estimate of damages if the danger be “ imminent and appreciable.” But this is shadowy and indefinite, and furnishes rather the semblance than the reality of a rule of discrimination. Nevertheless, it is perhaps as good as any of which the nature of the case admits.
In its charge to the jury, the court below said: “ The plaintiff sought to recover damages for certain incidental injuries which he alleges he sustained in consequence of the conversion of the canal into a railroad. As to most of the matters embraced .by this claim, 125] I was satisfied they did not form a *proper subject for compensation in damage, and therefore excluded the evidence offered. But, as to two of them, evidence was received. The first was as to increased danger from fire to the buildings, fences, and other property on the plaintiff’s land. When this evidence was offered, however, I became satisfied it was not sufficient to establish any appreciable increase of danger from fire, that any attempt to estimate ■damages from it would only involve the most uncertain conjectures, .and that it ought to be withdrawn from your consideration. I ■therefore rule out all evidence upon this point.”
Looking into the evidence embodied in the bill of exceptions, we ¡find the plaintiff has a house about one hundred and fifty feet from the railroad, on the south side, and that he has a barn about one hundred, and a house about two hundred feet from the railroad, on "the north side. We are not prepared to say, as at present advised, that the court below erred in its ruling on this point, and it is fairly ■entitled to the benefit of our serious doubts ; and, on the whole, we •prefer, on the general question, to await the possible revelation of ■.further light upon it.
5. In what was said by the court below in its charge to the jury, in respect to the berme bank of the canal, we see no error. A berme bank for the canal was necessary for the uses of a canal; .and whether it consisted of a natural or artificial deposit of earth ■can make no difference. It must have formed a part of the original .appropriation by the canal, unless there were a special agreement to *126 the contrary, and its dominion over it was, in law, exclusive. The plaintiff had full opportunity to show a special agreement to the ¡contrary, if such existed; and if, during the existence of the canal, without such contract, he had the use of the land up to the water’s .edge, it was as a matter of sufference and not of right.
For error in the charge of the court below, in respect to the third point above considered, the judgment is reversed, new trial awarded, ¡and cause remanded.
Day, C. J., and Scott, White, and Welch, JJ., concurred.