## John Gore *vs.* Jacob C. Brubaker.

*Injunction to prevent the erection of Obstructions on a strip of ground alleged to be a Public Way—Agreement for the Use of the strip of ground.*

If, by reason of obstructions erected on a strip of ground alleged to be a public way, the applicant for an injunction for their abatement, claiming the use of the strip of ground as one of the public, and negativing by the allegations of his bill and his testimony, all mere private right in it, were obstructed or deprived of reasonable access to his buildings on his lot, and thereby subjected to loss and inconvenience, that would be such special and particular injury as would entitle him, (if the allegations were well founded in fact,) to remedy from a Court of Equity. But the applicant for such an injunction and the purchaser of the strip of ground having contracted with each other in respect to its use, and the manner of user, on failure of compliance, the remedy would be on the agreement.

APPEAL from the Circuit Court for Carroll County, in Equity.

On the 30th of August, 1877, the appellant applied to the Court below, for an injunction to restrain the appellee

from erecting obstructions on a strip of ground, which is described in the opinion of this Court, and that the appellee might be enjoined from interfering with the complainant's ingress and egress over this strip of ground to and from his property. On the filing of the bill and exhibits the injunction was granted. Afterwards on answer being filed and testimony taken, the cause was submitted without argument for final hearing, and on the 5th February, 1880, the injunction was dissolved and the bill dismissed. From this decree of the Court below, (MILLER, HAYDEN and HAMMOND, J.,) the complainant appealed. The testimony taken in the cause is epitomized in the opinion. By the contract duly executed by the parties alluded to in the opinion, the appellee, Brubaker, proposed on the 21st of July, 1877, for a nominal consideration, to grant and convey to John Gore, the appellant, "the right of way or roadway across the controverted land, which roadway Gore must pave on a level with the grade of the foot or side-walk with flat stone, which said grade shall neither be increased or diminished more than four inches from its present grade, and to keep his said roadway in good repair, and further to have the right or privilege of moving his carriages in and out of his carriage house across said lot or disputed land. And further, the said Gore shall have the right or privilege of carrying or throwing his wood and coal across said lot, but shall not permit the the same to remain on said lot for a longer time than shall be reasonably necessary to convey the same across said land to its proper place. And further, that said Gore shall covenant that he will not obstruct, or in any manner impair the free use and occupancy of said lot by permitting coal, wood or carriage, or anything else to remain thereon for a longer period than shall be reasonably necessary to remove them for their ordinarily useful purposes; and further, that he will remove from off said lot, litter or objectionable matter, which may have been

placed there by his use of said lot, or by his agency; and further, that he will make and keep in repair the bridge across the gutter when he may make his crossing, and that said gutter shall not be made nearer than two feet to the line of said Gore's lot." The appellant accepted "the proposition, and agreed to the terms to be embodied in a conveyance, to be thereafter executed by Jacob C. Brubaker and wife to him. The consideration to be five dollars."

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*William P. Maulsby,* for the appellant.

*Charles B. Roberts,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The application of the plaintiff, in this case, for the injunction, was founded upon the allegation that the strip of ground, six or six and a half feet wide, lying along the whole extent, and contiguous to the east side, of his lot, in the village of Uniontown, had been dedicated to public use, and formed part of the cross alley running from Main Street north to the intersection of an alley running parallel with Main Street. He alleges in his bill that the entire open space between the fences enclosing his lot on the one side, and that of Gilbert on the other, is embraced within the limits of the public alley; and his various out-buildings being upon the east line of his lot, bounded, as he alleges, by this alley, the special ground of his bill is, that he is entitled to ingress and egress, from and to this alley, to and from his various buildings on and near the line of his lot thus bounded; and that, inasmuch as such ingress and egress have been obstructed by erections placed in the alley by the defendant, he is entitled to relief, and to have the defendant restrained.

If the allegations of the bill were true, and the plaintiff had done nothing to preclude him from invoking the aid of the Court, there could be but little difficulty in affording him relief. For if, by reason of the obstructions complained of, in the public way or alley, the plaintiff had been obstructed or deprived of reasonable access to his buildings on his lot, and thereby subjected to loss and inconvenience, that would be such *special* and *particular* injury to the plaintiff as would entitle him to remedy from a Court of equity. *Roman vs. Strauss,* 10 *Md.,* ·89; *Georgetown vs. Canal Co.,* 12 *Pet.,* 98; *Irwin vs. Dixon,* 9 *How.,* 10, 28; *Cook vs. Corporation of Bath, L. R.,* 6 *Eq. Cas.,* 177; *Higbee vs. Camden & Amb. R. Co.,* 19 *N. J. Ch.* 278. But these allegations of the bill are denied by the answer of the defendant; and the proof shows that they are not well founded in fact.

It appears from the testimony of Harbaugh, the only witness who professes to have knowledge of the original location of the ways of the village of Uniontown, that the alley between the lot now owned by the plaintiff and that owned by Gilbert, was, like the other alleys of the village, laid out to be sixteen feet wide; and that the strip of land on the west of this alley, and adjoining the lot not owned by the plaintiff, was not included in the alley, but was left by Cover, the founder of the village, to afford a more ample way for the benefit of his own property, now occupied by the defendant, to and from the main street of the town. This was a long time ago; and if the public had been allowed to use and enjoy this strip of land, in connection with the alley, uninterruptedly and without question, for the thirty or forty years, as alleged by the plaintiff, a public right by prescription or presumptive dedication might well be maintained. But the evidence makes it quite clear that there has been no such continuous and uninterrupted user by the public as would be sufficient to establish such right in

the strip adjoining the plaintiff's lot; and the user and treatment thereof by the plaintiff, and those preceding him in the occupancy of his lot, have been wholly inconsistent with the pretension now made that the public had acquired such right. The public have used the sixteen feet originally designed as the width of the alley; but the adjoining strip of six feet would appear to have been used and treated by the plaintiff, not as part of the public alley, but as vacant ground, proper to be made a place of deposit for lumber, wood, and coal, and even the erection of a coal-house. The defendant has recently acquired title to this strip of ground, and has constructed a boardwalk thereon; thus making a good way from his own property to Main Street,—the purpose, as it would appear, for which the strip was originally designed by the founder of the village.

Whether the plaintiff could have maintained a right to this strip of land by adverse user and possession, or whether he could have maintained a right to an easement therein, acquired by long user, for access to his buildings, are questions not presented on this bill. The plaintiff has thought proper to base his right to use the strip of ground upon the alleged right of the public therein; and by the allegations of his bill, and his own testimony, he negatives all mere private right in the strip of ground, as distinguished from his right therein as one of the public. It is solely upon the theory that the strip forms part of the public alley that the plaintiff founds his right to relief; and that foundation, as we have said, is entirely disproved.

But whether the application be made upon the one theory or the other, there is no ground for such relief as that asked by the plaintiff, upon the proof in the case. The plaintiff and defendant have contracted with each other, in respect to the use, and the manner of user, of the strip of ground in controversy; and the defendant

has proved that he is ready and willing to execute and give full effect to that agreement. If he fails to do so, the remedy of the plaintiff is upon the agreement, and not in the form in which he now seeks it.

Entertaining these views in regard to the case, we must affirm the decree of the Court below, with costs to the appellee.

*Decree affirmed with costs.*

(Decided 9th December, 1880.)