## THE BALTIMORE & OHIO RAILROAD COMPANY, A Body Corporate,

### *vs.*

## KATE A. GILMOR et al.

*Equity*: *pleading; injunctions; allegations in bill; mere allegation of irreperable injury, not sufficient. Appeals*: *Article 5, section 31 of Code; orders granting injunctions.*

The mere allegation of a complainant, in a bill for an injunction, that irreparable damage or mischief will ensue, is not sufficient. p. 617

To satisfy the conscience of the Court, the facts must be stated, to show that the apprehension of injury is well founded. p. 617

The obstruction of a highway is a common nuisance, and being a wrong of a public nature, the remedy is by indictment, and not by injunction, at the suit of private individuals, unless they have suffered from it some special and particular damages, different, not merely in degree, but in kind, from that experienced by other citizens. p. 617

The ground upon which equity interposes by injunction, to prevent the destruction of a street or highway, is the irreparable injury to the complainant. p. 618

An allegation that the complainants apprehend an injury to their business, and that they will be compelled to take a circuitous route in driving to different parts of a town, is insufficient. p. 618

Section 31 of Article 5 of the Code, relating to appeals from orders refusing to grant an injunction, has no relation to appeals from orders *granting* injunctions. p. 618

*Decided April 8th, 1915.*

Appeal from the Circuit Court for Howard County. In Equity. (FORSYTHE, JR., J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*James A. C. Bond* and *Francis Neal Parke,* for the appellant.

*John E. Dempster,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The appellees filed a bill of complaint in the Circuit Court for Howard County against the Baltimore and Ohio Railroad Company, in which they prayed that the defendant be enjoined from permanently closing Elkridge crossing to public travel unless an undergrade crossing be constructed in

the bed of the Washington and Baltimore turnpike road where the same passes under said railroad of sufficient height and width to accommodate small vehicles, as well as a foot passage, and for other and further relief.

The defendant filed a demurrer to the whole bill, which the Court overruled and granted the injunction as prayed. From the order granting the injunction the defendant has appealed.

The bill alleged that the plaintiffs are *bona fide* residents, taxpayers and business men of the village of Elkridge, in the First Election District of Howard County, and for a long time have been and still are engaged in professional and various business enterprises in that village on each side of the Washington and Baltimore turnpike road at and near where the Baltimore and Ohio Railroad Company crosses said road at grade; that the Washington and Baltimore turnpike road is a public highway running through the village of Elkridge, and that it is its main thoroughfare, and has been since the year 1813, when the highway was first laid out by authority of the General Assembly of Maryland; that upon each side of this road are erected and located all the business houses, stores, post-office, freight yards, physicians' offices and many of the private dwellings of Elkridge. It alleged that the Baltimore and Ohio Railroad Company was incorporated by Chapter 123 of the Acts of 1826, and that by section 16 of the act of incorporation, it was provided that wherever, in the construction of the road, it should be necessary to cross or intersect any established road or way it should be the duty of the company to so construct its road across such established road or way as not to impede the passage or transportation of persons or property along the same. It further alleged that the Washington and Baltimore turnpike road was an established road or highway more than ten years before the incorporation of the defendant company, and that by the Act of 1833, Chapter 170, the railroad company and the turnpike company were authorized to and did make an

agreement to change the grade at Elkridge crossing, which agreement bears date the 13th day of May, 1834, and that by said agreement the grade of the turnpike was altered and re-established at a five-degree grade as it approached the Elkridge crossing, and that said grade would at the present time be an easy and safe grade and would not impede the transportation and passage of persons along said highway. It is charged that after the execution of said agreement, the railroad company built its roadway crossing the turnpike road in accordance with the terms of the agreement, and that since the building of its roadway it has from time to time elevated its roadbed until within the last few years it has created a grade approaching said crossing so great that the passage and transportation of passengers and property at said crossing is now almost impossible. The bill further charged that the State Roads Commission has recently completed a new roadway running to the north of the present Washington and Baltimore turnpike road, passing under the Baltimore and Ohio railroad, and that since the completion of this new road, the railroad company has permanently closed the crossing at Elkridge where the turnpike road is crossed by the railroad, and that it is now engaged in the act of building a concrete subway under the railroad in the bed of the turnpike road for foot passage only, which, it is charged, is contrary to and without any authority of law; that the new road, just completed by the State Roads Commission, is so located as to be nothing more than a back road; that it is located immediately in the rear of all dwellings located on the north side of the Washington and Baltimore turnpike road, and can be of no use in the development of the village of Elkridge, and of no financial or business benefit to the residents thereof; that to permit the closing of the Elkridge crossing, without providing for an undergrade crossing where said grade crossing is now closed, and dividing, as it will, the village of Elkridge by an impassable barrier, necessarily works a destruction of the complainants'

businesses, decreases the value of their property and deprives them of the use and enjoyment of the highway, as they have always used and enjoyed the same; that the railroad company has already cut down the highway on the east side of its right of way where the highway crosses the railroad, and has driven piling to carry its tracks while it is building its subway, and that a change in the plans of the railroad company, providing an undergrade crossing where the railroad now crosses the turnpike would, according to present conditions, add but little additional cost to the railroad company, and could be done and carried out without injury or damage to the property. It is further alleged that the Baltimore and Ohio Railroad Company created the dangerous condition at the railroad crossing contrary to law and contrary to the Act creating it, and should be required to comply with section 16 of its act of incorporation, and make safe the highway so as not to impede the transportation and passage of persons and property along the same, and inasmuch as it is impossible for it to reduce the elevation of its roadbed as at present built and constructed, that in the place and stead of the subway now about to be built in the bed of the highway, that the railroad company be required to build an undergrade crossing sufficient to accommodate a part of the traveling public using small vehicles over said highway. It is charged that the closing of said crossing, without providing an undergrade crossing, would work irreparable damage to the plaintiffs and each of them, and that they are without any adequate remedy at law.

A diagram is here inserted which shows the location of the turnpike, the newly constructed State road, and the Elkridge crossing mentioned in the bill.

State Road No. 1—As relocated through Elkridge.

By Chapter 312 of the Acts of 1906, it was provided "that a public highway, to be known as State Road No. 1, be and the same shall be constructed between the cities of Washington and Baltimore, the course of which, *as near as practicable,* shall be along the route of the old Baltimore and Washington road, the bed of which, so far as the same is vested in the State or the several counties through which it passes, is hereby dedicated by way of easement or fee simple, as the case may be, to the public use."

The Act of 1912, Chapter 373, provided that State Road No. 1, which was required to be built by the Act of 1906, should be built through the town of Elkridge, "upon the bed of the old Washington and Baltimore turnpike road and at the same grade as the said road is at present constructed." By Chapter 50 of the Acts of 1914 the sum of $15,000 was appropriated to the State Roads Commission "for the purpose of concreting through the village of Elkridge the old Baltimore and Washington turnpike, from curb to curb, through said village, beginning at the point where the Baltimore and Washington boulevard diverges from said turnpike to the westerly side of said village to the point where said boulevard again connects with said turnpike on the easterly side of the said village near the Patapsco River, provided nothing herein shall prevent the closing of the grade crossing of the B. & O. Railroad upon the establishment of the State Roads Commission and said railroad of an undergrade crossing between Elkridge and the Viaduct Bridge."

This new road which diverges from and connects with the turnpike road at the points mentioned in the Act, and which is called in the bill "a back road," is shown upon the above diagram.

From the allegations of the bill and the Acts of Assembly referred to, the Court is called upon to deal with the following state of facts—*first,* that the plaintiffs are residents, taxpayers and business men of the village of Elkridge, with residences and places of business located on each side of a pub-

lic highway running through said village, and that the State has appropriated a sum of money for the purpose of concreting the highway from curb to curb through the village; that ingress and egress to and from their residence and places of business to the highway are not destroyed by the acts of the defendant, although access to parts of the village east and west of the former railroad crossing by wagons and vehicles is rendered more inconvenient; *secondly,* the plaintiffs are not alleged to be abutting landowners, or that they hold any title to the bed of the highway; *thirdly,* that the defendant by cutting down the east approach to the crossing and closing the same has obstructed the public highway, and that the subway which it proposes to construct in the bed of the highway, is designed to accommodate pedestrians only. The character and extent of the business in which the plaintiffs are engaged are not disclosed in the bill, and it is not alleged that they have in fact sustained damage to their business by the acts of the defendant. It is alleged that to permit the closing of the crossing, without providing an undergrade crossing, "necessarily works a destruction of their businesses, etc.," but no facts are stated to support this statement. "The mere allegation of a complainant that irremediable damage or irreparable mischief will ensue is not sufficient. To satisfy the conscience of the Court, the facts must be stated to show that the apprehension of injury is well founded." *Amelung* v. *Seekamp,* 9 G. & J. 468.

The complainants were not entitled to an injunction from the mere fact that the defendant had obstructed the highway. "The obstruction of a highway is a common nuisance, and, being a wrong of a public nature, the remedy is by indictment; it is not in itself a ground of civil action by an individual, unless he has suffered from it some special and particular damage, different not merely in degree, but different in kind, from that experienced in common with other citizens." *Houck* v. *Wachter,* 34 Md. 265; *Crook* v. *Pitcher,* 61 Md. 510; *Schall* v. *Nusbaum,* 56 Md. 512; *Bembe* v. *Anne Arundel Co.,* 94 Md. 327.

There being no appropriation of the plaintiffs' property, and no destruction of access to their property, the bill does not present the case of such serious or irreparable injury as entitled the plaintiffs to an injunction. The ground upon which the Court interposes by injunction to prevent the obstruction of a street or highway is stated in *White* v. *Flannigain,* 1 Md. 525; *Roman* v. *Strauss,* 10 Md. 89; *Gore* v. *Brubaker,* 55 Md. 86; *Zimmerman* v. *Cockey,* 118 Md. 491; and other cases. The act complained of must work irreparable injury to the plaintiff by the destruction of the highway. No such injury appears in this case. The most that appears is an apprehended injury to the plaintiffs' business by the acts of the defendant, and that they will be compelled to take a circuitous route in driving to different parts of the town. Without discussing the other grounds of objections to the bill, we hold, for the reasons stated, that the injunction should not have been granted.

A motion was filed by the appellees to dismiss the appeal upon the ground that the transcript of the record was not transmitted to this Court within the time prescribed by Article 5, section 33 of the Code. The order from which the appeal was taken was passed on October 5, 1914, and the order for appeal was filed on October 17, 1914. The record was made and transmitted to this Court on January 17, 1914, within the period of three months from "the time of the appeal prayed." As the appeal is from an order *granting* an injunction it is not within the provisions of section 31, Article 5. That section applies to orders *refusing* "to grant an injunction according to the prayer of the bill or petition filed in the cause," and on appeal taken as provided by that section "the transcript shall be made and transmitted to the Court of Appeals forthwith after the appeal prayed." The motion to dismiss the appeal must, therefore, be denied. It follows that the order appealed from must be reversed and the bill dismissed.

*Order reversed, and bill dismissed, the appellees to pay the costs.*